The second case for argument is United States v. Shue Moua. All right, Mr. Langland, we'll hear from you first. Good morning. You may proceed. May it please the Court. Good morning. Your Honors, I'm here because we have an order from the District Court overturning a magistrate's order suppressing evidence. And it's our position that the District Court committed error in the findings of fact as well as the conclusions of law in this matter. The District Court is supposed to conduct a review of the magistrate's findings in this case. And we believe in this situation that the District Court focused solely on the government position without proper consideration of those magistrates or of the magistrate judge's findings. It's inherently problematic, Your Honors, for the District Court to be able to have a real complete view of what happened in this hearing. I'm the only person in the room right now that actually saw the testimony that took place at this suppression hearing. And the magistrate judge was in the best position to evaluate the officer's credibility in terms of his testimony. Counsel, I don't disagree with that. And this is only a 10-minute argument, so I'm going to go ahead and ask a question. In some ways, this case is very complicated, but I wonder if in some ways it's really not all that complicated. On page 19 of your brief, you acknowledge that Eighth Circuit precedent says that even a minor traffic violation gives rise to reasonable suspicion. Do you dispute the point that Minnesota law requires a temporary vehicle registration permit to be displayed on the rear of the vehicle in the place where the license plate would be? No, that is what Minnesota law would require. And so don't we have a minor traffic violation here that would give rise to reasonable suspicion? Well, Your Honor, I'm sorry to interrupt you there. It's a Wisconsin temporary tag that we're dealing with. It's my understanding that another state's temporary tag registration requirements are accepted by other states. I mean, otherwise you would have to stop at the border of Minnesota and switch your tag around if you have a Wisconsin. As a practical matter, they're accepted, but I don't know that Minnesota law makes an exception for that. Well, okay, but I will tell you this. In the testimony from the officer, he testified as a person who's on a county bordering Wisconsin. He encounters Wisconsin drivers all the time. And he is familiar with the way Wisconsin handles its temporary registration tags. He testified to that on page 82 that he was very much aware of how Wisconsin would handle how they do Wisconsin temporary tags. In fact, we asked him in the hearing, have you been to the website? Do you understand? All you've got to do is put it in there. I'm not saying that his subjective statements are credible. I'm saying that there may be a violation of Minnesota law. Well, I guess the problem with that, Your Honor, is that we don't believe that he thought that this was a Minnesota temporary tag. He knew that this was a Wisconsin case. And so that didn't even come up in his testimony. I guess, ultimately, the magistrate judge's findings were that all of his testimony was never true. Does the evidence establish that before the stop, he knew it was a Wisconsin tag? Well, he testified he couldn't see it, the magistrate judge. Yeah, he said that he couldn't see it. And so in the testimony at the hearing, Your Honor, we put the exhibit. You can see Exhibit 1 and Exhibit 4. It's in the government's own brief. And the license plate was, in fact, the temporary tag was enlarged. And we're asking, this is what you couldn't see? The magistrate judge found that it was not credible. What did the district court find? The district court didn't really address that. He just said that, well, the testimony was that he didn't see it. But the district court didn't really get into that. What Judge Thunheim said was, well, the testimony was he didn't see the temporary tag. But that's not the full picture. Well, isn't that an endorsement of that as a finding by the district court? And the question is, to whom do we give the deference to as the fact finder? I think the magistrate, Your Honor. What's your authority for that, that we skip over the district judge and look to the report and recommendation that was not adopted? Well, the problem with that, of course, is that the district court judge can read a transcript. He can look at the exhibits that were admitted into the hearing. But he doesn't see the actual testimony of the witness. And the problem with that, of course, is that it's de novo. I was going to say, it's de novo review. And I think that our precedent says that under de novo review, we review the district court's findings for clear error. And the question that I've kind of got is that, well, okay, now we've got the question, what's the clear error? And you're saying the clear error is the magistrate judge got it right. Okay? And so the issue on that for us is that how does that establish that the district court's determination is clearly erroneous? I mean, what do we look at? What evidence specifically do you look at that's not just a credibility determination? Because what you've really got going on is that two judges made different credibility determinations. And the last one to make it is usually the one we give deference to, and he's the one who said that the stop was based on, at least in part, because he couldn't see the license tag. Well, I think what it comes down to, unfortunately for Ms. Moua here, is that the district court just basically said, I'm going to look solely at the government's objections, and then I'm going to read this transcript, but didn't get the full view of what happened in the hearing, Your Honor. I mean, ultimately, that's what this comes down to. And that is the problem for the case, of course. The district court continued to talk about, in the report rejecting the recommendation, observations of the officer that were also somewhat refuted on cross-examination. For example, talking about how the driver was not maintaining a proper position within the lane as he was following behind her. Well, that was also a situation where the officer had to admit that the driver was driving within tire tracks on an unplowed road. I mean, these are things that were just sort of left out of the district court's findings, Your Honor. And so, ultimately, that is the question. What you're saying is that, if I'm getting this right, is you're saying essentially that if you read Judge Tunheim's order, Judge Tunheim's order ignores the facts that were apparent and in the record, and that all of those are little clues to us that his credibility determination is clearly erroneous. That's exactly right, Your Honor. We had a real problem with the officer's testimony in the sense that, if you're in the room watching him, he had a lot of pauses, a lot of difficulty in being able to answer questions. He was looking for help from the government, frankly, in his testimony during the suppression hearing. He was much better when it came to the trial. We ultimately did have a jury trial in this case, which is not, you know, for a few years. Did you ask the district judge to hear more testimony? You know, we did file a response. There was an objection by the government, and I believe my response was that it was, you know, asking the district court to adopt the findings of the magistrate judge. I don't recall off the top of my head if I actually asked for a further hearing on that or not, Your Honor. I'd have to look that up and see. But I don't recall specifically asking for a new hearing. Typically, I would do that. Well, you seem to be complaining that the district court shouldn't make credibility findings without hearing the witnesses, so I thought... That is what I objected to, Your Honor. Well, but the judge is authorized to do that under the law, as I understand it, and under our cases. But I thought your remedy for your concern might have been to ask the judge to hear directly from the officer. I mean, I know you're hoping he'll just adopt the magistrate's findings, so you'd maybe rather not have another hearing. But if you don't ask for it, you might be at risk that the judge will rule based on the transcript. Well, we did object and ask the court to adopt those findings. Also, Your Honor, I mean, ultimately, I think the problem with the transcript here is that it doesn't necessarily show the things that I'm talking about here today, because you can read it and he makes an answer, but what you don't see is the way he's, you know, the things that you have to do to make credibility determinations, like, you know, the body language, things like that. And the magistrate judge simply found him not to be credible. And, in fact, if you look at his testimony, I mean, this officer's talking about seeing a person at a gas station who he thinks is impaired, and he says he can't see the registration tags, which is clearly visible. I mean, you can see, even in the far view picture in the brief, it's so obvious. The magistrate judge just simply didn't believe him. I mean, it's just that simple. And so instead of going, walking over to a vehicle to say, I can't see your tags or I can't see your license plate, this man goes across the street and parks in a parking lot and watches this driver go away. After he testified that he thought she was impaired, she could have been driving a stolen vehicle. I mean, that's the concern with having no tags on a car. And he drives away and just lets her leave the gas station and then follows her for nine miles onto I-94, or I-35W, before then deciding, well, I better make a traffic stop, because they're coming up on the county line. It's not because she committed more violations of any traffic laws or did anything else that would indicate impairment. And, in fact, we did argue that the traffic stop was expanded, Your Honors, because as he pulled up behind the vehicle, you can see it in the government zone exhibits, that Wisconsin temporary tag printed right across the top is visible, and he stops and he looks at it. He sees what it is, and there is nothing else to justify that stop at that time. At that point, would reasonable suspicion have dissipated? Yes. That's my position. Our position is he knew that there was a tag on that vehicle. And yet, if it wasn't in the middle of the vehicle, it would still violate Minnesota law, wouldn't it? I'm sorry. Well, the suspicion as to whether it had a temporary in-transit sticker would have dissipated. But if it wasn't in the right location for Minnesota law, wouldn't there still be a violation of state law? We don't think it was a violation, because it was a Wisconsin tag, and she was in compliance with Wisconsin's registration requirements, and we think that that applies whether you're driving in another state or not. I'm out of time. Thank you for your argument. Mr. Evans, we'll hear from you. Good morning. Good morning, Your Honor. Thank you. May it please the Court, Matthew Evans on behalf of the United States. Sheriff's Deputy Niels Hansen was an experienced law enforcement officer who specialized in impaired driving investigations and traffic safety enforcement. In the early morning hours, Deputy Hansen encountered a driver without apparent registration who showed numerous signs of impairment. You said without apparent registration. I've never seen such a large in-transit sticker in my entire life on a car. I think the video evidence contradicts that rather plainly. Okay. So, Your Honor, I think, first of all, and I think most important is to remember, and based on the Court's questions, it's well understood that the standard of review here for the fact, the ultimate, the only disputed issue of fact is... ...that there was clear error. Should that be the case, then, Your Honor, we would rely only on the impaired driving for which there's also... I've seen the photos myself. It's very clear. I think, Your Honor, there's some, there's certainly ambiguity. The two pieces the magistrate judge relied on to say Deputy Hansen knew or should have known about the temporary registration was a much higher gas station surveillance video, much better angle than Deputy Hansen had, where he was only very briefly parked with Defendant Mua behind him. So he's looking... The other photo I'm referring to is from your own brief. Your Honor, so I think the last photograph, I believe, in my brief, but the only one that I think, or that shows temporary registration is now, this is after the stop has occurred, Deputy Hansen has walked up, flashes his flashlight, he's got the spotlight from his car, his car's headlight, and he looks and he notes, he doesn't verbalize it, but he testified to this fact that that's when he knew it, long after he had conducted this stop. There's a photograph from his, or a still shot from his dash camera showing his view on the road. I certainly cannot see any piece of paper at all. The only evidence, so the magistrate judge relied on two facts. It was the gas station surveillance, or two pieces of evidence, was the gas station surveillance, which doesn't accurately represent what Deputy Hansen saw, and highlights, I believe it's at second 57 of the exhibit of the video, and the magistrate judge says it's visible, you can see. During that portion, you cannot see any, I mean, no indication that there's temporary registration. It only becomes visible long after the stop has occurred, and Defendant Mula is parked on the side of the road. I thought he developed this reasonable suspicion at the gas station. For the temporary registration? Certainly, and it was right away. He pulls in, first thing he testified to noticing was behind him he saw a vehicle. Given how Defendant Mula's vehicle is positioned, he was looking at the rear of her vehicle. He was looking in the mount where we hang license plates. That's a real issue? The location? That's one of many issues, and that's an easy way for this court to resolve it. Wait a minute. Are you saying that it's a violation of Minnesota law to drive a Wisconsin car with a proper temporary tag through Minnesota? That's correct. But I think that's . . . What's correct? That Minnesota law, unlike some other states in this circuit, and our brief is filled with a circuit case law dealing with Nebraska . . . What's correct? You said that's correct. What did you mean? That it would be a violation, that temporary . . . Cannot drive a validly registered Wisconsin car through the state of Minnesota? Minnesota law, unlike some other states, does not recognize that valid registration in a different state per se means it's validly registered here. What do you mean per se? It doesn't adopt . . . Minnesota law says here are the rules for having registration. Of a Minnesota vehicle. It's not so limited. You're saying if you drive an Iowa car through Minnesota, you're in violation of Minnesota law because you have Iowa plates? No, it specifically says that in this section, I believe it's 169, it talks about how registration needs to be posted. And it says permanent registration needs to be on the front of the vehicle and the back of the vehicle. So if you're from a state that only requires one plate, you're in violation of Minnesota law when you drive that car in Minnesota? That's how the law is written, at least for permanent registration. But this would be true with North Dakota and South Dakota. Both allow you to just post a temporary registration or an in-transit license just on the back windshield. So now you've got every state on your border, every time somebody goes into Wisconsin to buy a car or they go into North Dakota or South Dakota to buy a car, every single one of those people is in violation of Minnesota law. That's your claim. That's Minnesota law on this, but what case says that? Is there a Minnesota case that says that? I certainly didn't cite one, Your Honor. That's just based on reading the statute. But I think it's most important to address the fact that right now we're addressing whether Deputy Hanson had reasonable suspicion of a violation. And here he looked where license plates ought to be. He didn't see any. The district court, there was some discussion. Your brief on page 34 makes it very clear that that is the government's position, that it's a violation of Minnesota law unless you have both either a front and rear plate or a temporary tag in the middle of the back. There are 31 states in the United States that require both front and back plates. 19 do not. So is it your position that anyone from those 19 states who dares drive in Minnesota, that there's reasonable suspicion to pull them over? An officer who believes that the vehicle is not appropriately registered in Minnesota would have reasonable suspicion, including, I mean, yes. That's a yes. You're saying yes. How does that square with our precedent in U.S. v. Macklemore that mere temporary registration does not equate to reasonable suspicion? Absolutely, Your Honor. So Macklemore, I think, is readily distinguishable based on the facts of that case where the officer who testified at the suppression hearing said, I saw a temporary tag, so I pulled them over. She didn't close. She did say I couldn't read the tag, but she asserted no violation whatsoever. And she clearly admits she did see the tag. And I think Macklemore mostly stands for the proposition that, you know, it stands for several, but just the mere presence of a temporary tag is not reasonable suspicion to pull over a vehicle. I do think that your — the government's position may implicate the privileges and immunities clause in the right to interstate travel, but it's my understanding that neither of those were raised in this case. That's correct. Neither of those were raised at all. And I would like to address the issue for this Court is whether Deputy Hansen had reasonable suspicion of a violation. And here, the district court very clearly found on page 2 of the Well, then that — if that's true, then all these questions about what complies with Minnesota law don't matter. Certainly. The Court need not address any of the what does the State law say. The factual finding by the district court that was well-supported by the record completely avoids the issue, and it puts us — You're saying he found — where are you looking on page 2? It's the third-to-last line. He did not see a license plate or registration on the car. So you're saying that gave him authority to stop because he had reasonable suspicion that there was no registration of any kind. Certainly. And that is — You think that's not clearly erroneous in light of the videos that — Certainly. It's well-supported both by the officer's testimony. He talked about how he was viewing the vehicle. He talked about looking in the mount. What about his testimony — excuse me, I didn't mean to cut you off, but what about his testimony where he said that he believed that all States require rear-mounted registrations in the license bracket at all times? I mean, listen, this is a State that has States on its borders? It's apparently none of them have such a requirement. How did he come to that belief? I mean, it doesn't really seem to pass the smell test. Ultimately, Your Honor, he — still the question — I'm sorry, how does that — I don't mean to avoid the question. Here's what he said. I mean, listen, I've sat in a gazillion suppression hearings from my time as a county court magistrate and as a State district court judge and as a U.S. district court judge. I mean, I have heard it all. And I will tell you that a hallmark of a guy who I just am not going to believe is a guy who takes the stand and says, the sky is orange. Right? I mean, and that's kind of a statement. I mean, this guy made a statement. He said, as far as I can tell, every State requires the temporary registration to be placed in the license bracket. And you couldn't possibly live in Minnesota and have that belief. It's impossible. If you just look at the temporary registrations from Wisconsin, North Dakota, and South Dakota. My time is up. May I? Yeah, go ahead. Your Honor, I believe the testimony wasn't quite as clear as you articulated. That's the finding Judge Tunine made. But I believe his testimony was not that every State requires rear-mounted registration in the brackets. I believe what he was saying was that temporary registration or permanent registration needs to be mounted, meaning posted, on the back of the vehicle, which would include the rear window. I believe that's the best interpretation, and I believe that's what the record reflects.  Mike. All right. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file a decision in due course. Counsel are excused.